# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY EUGENE ELDER, | CV F   06-1504 DLB HC |
| Petitioner, | ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |
| v. | |
| J. WALKER, WARDEN, | |
| Respondent. | [Doc. 7] |
| _____/ | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.  (Court Doc. 20.)

RELEVANT HISTORY

Following jury trial in the Kings County Superior Court, Petitioner was convicted of making a criminal threat and the lesser included offense of attempt to make a criminal threat. Petitioner was sentenced to fifty years to life in state prison.

Petitioner filed a timely notice of appeal with the California Court of Appeal, Fifth Appellate District.  On August 11, 2005, the Court of Appeal affirmed the judgment in its entirety.  (Lodged Doc. No. 4.)

Petitioner then filed a petition for review in the California Supreme Court, which was denied on November 22, 2005.  (Lodged Doc. Nos. 5, 6.)

Petitioner filed the instant federal petition for writ of habeas corpus on October 24, 2006,

1

and an amended petition on February 26, 2007.  (Court Docs. 1, 11.)  Respondent filed an answer

to the amended petition on August 3, 2007, and Petitioner filed a traverse on December 19, 2007.

(Court Docs. 17, 27.)

STATEMENT OF FACTS

At the time of the commission of the instant offenses, Petitioner was in state custody at

Corcoran State Prison as a result of a rape conviction.  (RT 216, 232, 275.)  During his

incarceration at San Quentin State Prison, he raped a counselor while he was housed in the

security housing unit.  (RT 246, 305, 316.)  Petitioner was scheduled to be released from prison

on August 16, 2002.  (RT 260.)

<u>Threat Against Correctional Officer Glen Stailey</u>

Sometime in late May or Early June of 2002, Petitioner filed an inmate complaint form

against correctional officer Glen Stailey claiming "That cop keep [sic] playing with me," and that

"He keep throwing my so call case factors to everybody [sic]."  (RT 235, 236, 254, 274.)

Petitioner also claimed that Stailey mentioned something to the effect about castrating a rapist.

(RT 277.)  The specific threats were toward Stailey, and included references to the Burchfield[1]

killings in San Quentin and a 60-day countdown.  (RT 235, 237, 253-254, 304, 306.)   The

complaint was given to the building sergeant, Michael Robicheaux, who was in charge of the

housing unit where Petitioner was located.  (RT 231-233.)

Robicheaux interviewed Petitioner regarding his inmate complaint on May 27, 2002.  (RT

231, 235,  245.)  During the interview, Petitioner became angry and belligerent when questioned

about his complaint against officer Stailey.  (RT 238-239, 292-293.)  Petitioner shouted stating

that he would "lay low for a few years and snuff Officer Stailey's bitch ass out."  (RT 239.)  He

further stated that he would do more than the "Burchfield killings in San Quentin to Officer

Stailey," and he would kill any peace officer that he saw when he paroled.  (RT 241.)  He

specifically stated, "I will kill quite a few people.  I will commit murder and mayhem when I get

[1] As reflected in the state appellate briefs, Burchfield is the name of a correctional officer at San Quentin who was stabbed to death by an inmate sometime during the 1970's or early 1980's.  (RT 240, 322.)

2

1  out.  And I will do more than the Zodiac killer."[2]  (RT 242.)  He further stated, "You can't

2  fuckin' touch me.  I would get out and kill mother fuckers.  There ain't a damn thing you can do

3  about it.  Yeah, you mother fuckers think you can hold me, but you can't.  You can't touch me."

4  (RT 242.)   As Petitioner became angrier, the interview was terminated.  (RT 242.)

5      Sergeant Robicheaux determined that Petitioner had made a threat against officer Stailey,

6  so a rules violation report and threat assessment were initiated.[3]  (RT 247-248, 270.)  On June 3,

7  2002, pursuant to prison policy Robicheaux notified Stailey that Petitioner had threatened his

8  life.  (RT 244-246, 268.)  Officer Stailey was given a copy of the paperwork from the interview

9  and he was informed of Petitioner's violent past including a conviction for rape on previous

10  correctional staff and on the streets.  (RT 246, 305, 316.)  Stailey was visibly upset by the

11  information.  (RT 251-252.)  Stailey requested that Petitioner be moved to a different housing

12  unit away from him, which was done by the administration.  (RT 308.)

13      Robicheaux also informed outside authorities in the event Petitioner was released.  (RT

14  263-264, 267-268.)   Pursuant to prison policy, Robicheaux provided a copy of his report up the

15  chain of command.  (RT 252-253.)  Thereafter on June 6, 2002, the facility captain completed a

16  crime incident report.  (RT 269-270.)

17      Officer Stailey testified that he did not know Petitioner very well and did not recall any

18  animosity between the two of them.  (RT 300, 302.)  Prior to the current incident, Stailey was not

19  aware of Petitioner's case factors.[4]  (RT 302, 315-316.)  Stailey recalled that he had contact with

20  Petitioner during meal feeding, or as an escort to the yard, law library, or for medical and dental

21  needs, but he was not aware of Petitioner's medical situation.  (RT 314, 321.)

22      Stailey took the threat made by Petitioner very seriously.  (RT 306.)  He was immediately

23

24      [2]  The Zodiac killer was a serial killer.  (RT 242.)

25      [3]  A threat assessment is an interview conducted with the inmate to determine the credibility of the threat
26  and an inmates ability to carry it out, a review of the inmate's past, and a determination whether the inmate or prison
    guard should be transferred.  (RT 246.)

27      [4]  An inmate's case factors are the crimes or situations that inmates have been in or that they have
28  committed which determines their custody level.  (RT 275.)  Inmates generally do not want their case factors known,
    especially rape and child molesting which may subject the inmate to danger.  (RT 316-317.)

aware of Petitioner's reference to the "Burchfield" killings.  (RT 304, 322.)  Stailey interpreted

the "Zodiac" reference to mean that Petitioner would not just kill him, but also his family and/or

his partners as well.  (RT 309.)  Stailey took immediate precautions by informing his wife about

the situation, getting a watch dog, and maintaining a heightened state of alert. (RT 323-324.)

Stailey stated that he never revealed Petitioner's case factors to anyone, and never told other

correctional staff that Petitioner was a rapist.  (RT 328-329.)

<u>Attempted Threat Against Doctor Rocky Underwood</u>

Doctor Rocky Underwood, a clinical psychologist in the Security Housing Unit at

Corcoran State Prison, was assigned to conduct the threat assessment of Petitioner on June 17,

2002, as a result of the threat against officer Stailey.  (RT 343-345, 393.)  The assessment was to

determine the credibility of the threat and whether any significant psychological factors were

involved.[5]  (RT 346.)

At the beginning of the interview, Petitioner was pleasant and ingratiating.  (RT 347.)

Petitioner repeated his previous threats against officer Stailey to Dr. Underwood stating that he

was justified in making the threats because Stailey was "fucking" with him.  (RT 348.)  When

Underwood questioned Petitioner specifically about the threats against Stailey, he became

agitated and animated, and again felt that he was justified in his threats indicating he would wait

for years to get him if he had to.  (RT 349-350, 352.)  Upon further questioning, Petitioner

became very hostile, kicking and banging the holding cell and threatened to kill Underwood as

well.  (RT 352.)  Petitioner's actions drew the attention of the two officers that were outside of

the interview room.  The officers restrained Petitioner, as he continued to threaten Underwood,

because they were afraid for their safety.  (RT 352.)  Dr. Underwood felt that his safety was in

jeopardy if he had not been in a cage, and reached for his personal alarm.  (RT 353-354.)

Underwood testified that after working with over 3,000 inmates, this was the first time his life

had been threatened by an inmate.  (RT 354.)

Prior to the interview, Underwood reviewed Petitioner's California Department of

---

[5]  As the assessment did not involve a therapeutic relationship, the psychologist patient privilege did not
attach, of which Petitioner was informed.  (RT 347.)

Corrections (CDC) file, and was therefore aware that Petitioner's commitment offense was for rape, and then subsequently raped his counselor at San Quentin.  In addition, the file contained information that Petitioner had made other threats to officers and had a history of aggressive behavior toward prison staff, which contributed to the fear for his safety.  (RT 356-358.)  In addition, the fact that Petitioner was set to be released in sixty days made Underwood nervous.  (RT 357.)

DISCUSSION

A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. §§ 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.    Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with

1    respect to a state prisoner's claim that was adjudicated on the merits in state court. <u>Williams v.</u>

2    <u>Taylor</u>, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

3    will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

4    to, or involved an unreasonable application of, clearly established Federal law, as determined by

5    the Supreme Court of the United States;" or "resulted in a decision that was based on an

6    unreasonable determination of the facts in light of the evidence presented in the State Court

7    proceeding." 28 U.S.C. § 2254(d); <u>Lockyer v. Andrade</u>,123 S.Ct.1166 (2003) (disapproving of

8    the Ninth Circuit's approach in <u>Van Tran v. Lindsey</u>, 212 F.3d 1143 (9th Cir. 2000)); <u>Williams v.</u>

9    <u>Taylor</u>, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

10   because that court concludes in its independent judgment that the relevant state-court decision

11   applied clearly established federal law erroneously or incorrectly."  <u>Lockyer</u>, at 1175 (citations

12   omitted).  "Rather, that application must be objectively unreasonable." <u>Id.</u> (citations omitted).

13        While habeas corpus relief is an important instrument to assure that individuals are

14   constitutionally protected, <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

15   (1983); <u>Harris v. Nelson</u>, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

16   criminal conviction is the primary method for a petitioner to challenge that conviction.  <u>Brecht v.</u>

17   <u>Abrahamson</u>, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

18   factual determinations must be presumed correct, and the federal court must accept all factual

19   findings made by the state court unless the petitioner can rebut "the presumption of correctness

20   by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Purkett v. Elem</u>, 514 U.S. 765, 115

21   S.Ct. 1769 (1995); <u>Thompson v. Keohane</u>, 516 U.S. 99, 116 S.Ct. 457 (1995); <u>Langford v. Day</u>,

22   110 F.3d 1380, 1388 (9th Cir. 1997).

23   C.    <u>Insufficient Evidence to Support Conviction of Making a Criminal Threat</u>

24        Petitioner contends that there was insufficient evidence to support his conviction of

25   making a criminal threat against correctional officer Stailey because there was not sufficient

26   evidence that he intended the threat be conveyed to Stailey or that the threat carried the

27

28

immediate prospect of execution as required under California Penal Code section 422.[6]

The law on insufficiency of the evidence claim is clearly established.  The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

Section 422, states as follows:

> Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed on year, or by imprisonment in the state prison.

With regard to the threat to officer Stailey, the evidence at trial established that Petitioner made the threat to three people who either knew the intended victim or worked at the same place with him, and were thus under a duty to tell officer Stailey about the threat.  Petitioner not only transcribed the threat in writing, he repeated the threat first to Sergeant Robicheaux and then to Dr. Underwood, along with a new threat.  (RT 236, 239, 254, 271-275, 348-352.)  Petitioner gave the inmate complaint form containing the threat against officer Stailey directly to the facility captain.  (RT 235, 237, 274-275.)  Petitioner then reiterated his threat during his interview with Robicheaux, and it is reasonable to conclude that Petitioner intended his statement to be conveyed to Stailey by Robicheaux, as precisely done.  (RT 239.)  Petitioner repeated his threat again during the threat assessment and interview by Dr. Underwood.  (RT 349-350, 352.)

Petitioner's threats were specific.  He specifically made reference to doing a "Burchfield," to officer Stailey, which implied that he would kill Stailey while he was still in

---

[6] All further statutory references are to the California Penal Code unless otherwise indicated.

prison, just as was done to Burchfield. (RT 240-241, 322.) He continued that if he were

unsuccessful in his attempt, he would continue to hunt down officer Stailey after he was paroled

in sixty days, for years if necessary, until he killed him. (RT 239-341.) In addition, he stated that

he do a "Zodiac" killing, implying that he would kill more people than just Stailey, such as

Stailey's family or partners. (RT 242.) Petitioner was scheduled to be released in sixty days, and

prison policy required that an office be informed of threats made against him/her by an inmate.

(RT 244-246, 268, 357.) Furthermore, as stated by the Court of Appeal, there was sufficiency

evidence to support a finding that there was a present ability to carry out the threat. As alluded to

in Petitioner's reference to the Burchfield killing, "inmates in high security facilities have killed

correctional officers in the past. In addition, [Petitioner] had committed an act of violence, rape

of his counselor, while housed in a security unit at San Quentin. Thus, [Petitioner's] contention

that as a high security inmate he did not have the ability to carry out a threat or an act of violence

is not supported by the facts." (Lodged Doc. No. 4, Opinion, at 6.) Based on Petitioner's

communication of his threats in both written and oral form, the jury could reasonably infer that

Petitioner intended his threat to be communicated to Stailey.

With regard to the threats against Dr. Underwood, there is sufficient evidence to support

the jury's finding. During the interview by Dr. Underwood, Petitioner specifically stated, "I'm

going to kill you, too, you bitch ass, mother fucker." Petitioner was very hostile and angry at the

time he communicated the threat, to the point that officers had to enter the room to restrain him

out of fear for Underwood's safety. (RT 352.) Dr. Underwood felt that his safety would have

been in jeopardy had Petitioner not been in a cell. (RT 353.) In fact, Dr. Underwood was scared

to the point that he reached for his personal alarm. (RT 354.) Based upon these circumstances,

there was sufficient evidence to support the jury's finding that Petitioner attempted to make a

criminal threat against Dr. Underwood, and the state courts' determination of this issue was not

contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

D.    Ineffective Assistance of Counsel

Petitioner contends that his trial counsel was ineffective "for failing to object to instruct

sua sponte on intended statement to Stanley [sic]." In support of his claim, Petitioner points to

8

1   pages 25 through 31 of his memorandum of points and authorities.  However, as Respondent

2   correctly points out, the memorandum does not mention an ineffective assistance of counsel

3   claim.  Rather, that portion of the memorandum sets forth an argument dealing with the trial

4   court's alleged error in failing to instruct the jury, sua sponte, that Petitioner specifically intended

5   his threat to be communicated to officer Stailey.

6        The law governing ineffective assistance of counsel claims is clearly established for the

7   purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe,

8   151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

9   assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S.

10  668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First,

11  the petitioner must show that counsel's performance was deficient, requiring a showing that

12  counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by

13  the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's

14  representation fell below an objective standard of reasonableness, and must identify counsel's

15  alleged acts or omissions that were not the result of reasonable professional judgment

16  considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

17  (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges

18  a strong presumption that counsel's conduct falls within the wide range of reasonable

19  professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v.

20  Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

21       Second, the petitioner must show that counsel's errors were so egregious as to deprive

22  defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must

23  also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's

24  ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356,

25  1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance

26  was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that

27  (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would

28  have been different.

1    A court need not determine whether counsel's performance was deficient before

2    examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

3    Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove

4    prejudice, any deficiency that does not result in prejudice must necessarily fail.

5    Ineffective assistance of counsel claims are analyzed under the "unreasonable

6    application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d

7    1058, 1062 (2000).

8    Although Petitioner raised an ineffective assistance of counsel claim in his petition for

9    review submitted to the California Supreme Court, the claim was limited to counsel's alleged

10   ineffectiveness for failing to object to hearsay statements.  There was no mention of counsel's

11   alleged failure to object to the jury instructions.  As such, the instant claim is unexhausted as it

12   raises a substantively different claim regarding counsel's actions.  Notwithstanding Petitioner's

13   failure to exhaust this claim, it is clear the claim fails on the merits.  See 28 U.S.C. § 2254(b)(2);

14   Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (a federal court may deny an unexhausted

15   petition on the merits only when it is perfectly clear that the applicant does not raise even a

16   colorable federal claim.).

17   In addressing and denying the related claim-that the trial court erred in failing to sua

18   sponte modify the language of the elements of section 422 definition to state that the jury had to

19   find that Petitioner specifically intended his threat be communicated to Stailey-the Court of

20   Appeal held, in relevant part:

21           The jury was instructed with the standard instruction outlining the
             elements of a section 422 offense, CALJIC No. 9.94.  CALJIC No. 9.94
22           "sufficiently identifies the elements of the crime that the jury was required to find
             to convict under section 422."  Added to the standard instruction was the
23           statement, "The crime of criminal threats is committed even though a person
             communicates the threat to a victim through a third party."  This additional
24           language comports with the holding in In re David L., supra, 234 Cal.App.3d at p.
             1660.
25
             On its face, as [Petitioner] acknowledges, the instruction accurately sets
26   forth the elements of the offense.  Ordinarily, "A party may not complain on
     appeal that an instruction correct in law and responsive to the evidence was too
27   general or incomplete unless the party has requested appropriate clarifying or
     amplifying language. [Citation.] [Petitioner] made no such request.
28

1
2
3

     Furthermore, [Petitioner] cannot predicate a claim of error on an isolate phrase or sentence. Jurors were instructed not to "single out any particular sentence or any individual point or instruction and ignore the others. Consider the instructions as a whole."

4

     In determining whether instructional error has occurred, we assume jurors are capable of understanding and correlating all instructions.

5
6
7
8
9

     Here, the jury received several instructions informing it of the specific intent element of section 422. CALJIC No. 9.94 requires the jury to find that the defendant made the threat with the "specific intent that the statement be taken as a threat." The jury also was instructed with CALJIC No. 3.31, which states in relevant part that the jury must find the existence of "a certain specific intent in the mind of the perpetrator." The jury further was instructed with CALJIC No. 2.02, which provides in part that the defendant cannot be found guilty of the crime charged "unless the proved circumstances are not only (1) consistent with the theory that the defendant had the required specific intent but (2) cannot be reconciled with any other rational conclusion."

10
11
12

     The instructions given to the jurors informed them that in order to return a verdict of guilty, they had to find that [Petitioner] specifically intended to threaten Stailey and to cause Stailey to be in sustained fear. They also were instructed that [Petitioner] could carry out this specific intent by communicating the threat to Stailey through a third party.

13

     We conclude any error was harmless in light of the instructions given to the jury.

14

(Lodged Doc. No. 4, at 10-11, citations omitted.)

15     For the reasons explained by the Court of Appeal, because Petitioner was not entitled to a

16 limited instruction regarding the finding under section 422, counsel could not have been

17 incompetent for his failure to request such instruction. As such, Petitioner cannot establish the

18 Strickland standard, and his claim fails on the merits.

19 E.    Admission of Prior Hearsay Evidence

20     Petitioner contends that his due process rights were violated by the admission of the prior

21 act hearsay evidence. Petitioner raised this claim on direct appeal to the California Court of

22 Appeal, Fifth Appellate District and California Supreme Court. (Lodged Doc. Nos. 1, 5.) The

23 Court of Appeal denied the claim in a reasoned opinion and the California Supreme Court

24 summarily denied review. In such circumstances, this Court "looks through" that decision and

25 presumes it adopted the reasoning of the California Court of Appeal, the last state court to have

26 issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct.

27 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that

28 higher court agrees with lower court's reasoning where former affirms latter without discussion);

1   see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look

2   to last reasoned state court opinion in determining whether state court's rejection of petitioner's

3   claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

4          Over defense counsel's objection, the prosecutor introduced evidence that both Officer

5   Stailey and Dr. Underwood were aware of Petitioner's prior violent acts to prove they were in

6   sustained fear within the meaning of section 422.  (RT 202, 219-223.)  In allowing the evidence

7   to be presented, the trial court reasoned that such evidence was admissible to show that Dr.

8   Underwood was in fear for his life when Petitioner threatened him, and such fear was reasonable.

9   The trial court limited the evidence to Petitioner's violence and did not allow the prosecution to

10  mention Petitioner's history of raping minors.  (RT 230.)

11         At trial, Dr. Underwood testified that prior to interviewing Petitioner, he reviewed his

12  inmate file which included the fact that Petitioner previously "raped his counselor at San Quentin

13  State Prison in the housing unit."  (RT 356.)  This provided a basis for Dr. Underwood's belief

14  that Petitioner had the ability to carry out his threat.

15         Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a

16  federal habeas corpus proceeding. Estelle, 112 S.Ct. at 477; Middleton v. Cupp, 768 F.2d 1083,

17  1085 (9th Cir.), cert. denied, 478 U.S. 1021 (1985).  Nevertheless, there can be habeas relief for

18  the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a

19  denial of due process. Estelle, 112 S.Ct. at 482; Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871,

20  874 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d

21  1180, 1192 (9th Cir. 1993), cert. denied, 510 U.S. 1191, 114 S.Ct. 1294 (1994); Gordon v. Duran,

22  895 F.2d 610, 613 (9th Cir.1990).

23         In rejecting Petitioner's claim on direct appeal, the Court of Appeal held, in pertinent

24  part, as follows:

25              [Petitioner] acknowledges the prosecution had to prove that Stailey and
            Underwood were in sustained fear in order to establish all elements of a section
26          422 offense.  Therefore, evidence tending to establish an element of the charged
            offense, such as the victim's sustained fear, is relevant evidence and generally
27          admissible. []

28              Prior to admitting the prior acts evidence, the trial court evaluated the

12

1    evidence pursuant to Evidence Code section 352, excluding some prior acts
     evidence as unduly prejudicial and admitting other prior acts.  Stailey and
2    Underwood were allowed to testify regarding only those prior acts of which they
     had knowledge at the time the threats were made and then only as to acts against
3    adult victims.

4           [Petitioner] acknowledges that evidence of the type admitted here has been
     admitted to prove the sustained fear of a victim in other cases. [citation].  He
5    contends, however, that a critical distinction is that in the other cases the victims
     learned of the prior conduct from the defendants rather than from reading law
6    enforcement records, which [Petitioner] contends is inadmissible hearsay.

7           In our view, this distinction in the manner in which a victim learned of
     prior violent acts is not relevant to its admissibility when admitted to establish the
8    frame of mind of the victim.  The evidence was not offered for the truth of the
     matters contained in the records; hence the hearsay rule is inapplicable. [citation.]
9    Nor was it offered as propensity evidence.  The evidence . . . here was admitted
     solely for the limited purpose of establishing the state of mind, sustained fear, of
10   the victims.

11          We conclude the trial court's decision to admit limited evidence of prior
     violent acts against adults was not an abuse of discretion. [citation.]
12
     (Lodged Doc. No. 4, Opinion, at 8-10.)
13
            The evidence was admitted, not for the truth of the matter asserted therein, but to
14
     demonstrate that the victims were in sustained fear for their safety.  As such, the admission of the
15
     fact that Petitioner previously raped one of counselor's while in prison was not fundamentally
16
     unfair and did not result in a denial of due process.  The trial court limited the admission of the
17
     evidence to Petitioner's violent conduct, and reasonably concluded that it was relevant to the
18
     determination of whether the victim's were in sustained fear under section 422.  Therefore, there
19
     was a permissible inference the jury could draw from the evidence.  The state courts'
20
     determination of this issue was not contrary to, or an unreasonable application of, clearly
21
     established Supreme Court precedent.
22
     F.     Presentence Custody Credits
23
            Petitioner contends that he should have been awarded additional days for good time
24
     custody credits.  In the alternative, Petitioner claims that counsel was ineffective for his failure to
25
     object to the calculation of his credits.  Petitioner raised this claim on direct appeal to the
26
     California Court of Appeal, Fifth Appellate District.  (Lodged Doc. No. 1.)
27
            The Court of Appeal held that Petitioner had waived this claim by failing to object at the
28

                                              13

1    sentencing hearing.  (Lodged Doc. No. 4, Opinion, at 11-12.)

2          This claim is unexhausted.  A petitioner who is in state custody and wishes to collaterally

3    challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial

4    remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court

5    and gives the state court the initial opportunity to correct the state's alleged constitutional

6    deprivations.  Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991); Rose

7    v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163

8    (9th Cir. 1988).

9          A petitioner can satisfy the exhaustion requirement by providing the highest state court

10   with a full and fair opportunity to consider each claim before presenting it to the federal court.

11   Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828,

12   829 (9th Cir. 1996).  A federal court will find that the highest state court was given a full and fair

13   opportunity to hear a claim if the petitioner has presented the highest state court with the claim's

14   factual and legal basis.  Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal

15   basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

16   Additionally, the petitioner must have specifically told the state court that he was raising a

17   federal constitutional claim.  Duncan, 513 U.S. at 365-66, 115 S.Ct. at 888; Keating v. Hood, 133

18   F.3d 1240, 1241 (9th Cir.1998).  For example, if a petitioner wishes to claim that the trial court

19   violated his due process rights "he must say so, not only in federal court but in state court."

20   Duncan, 513 U.S. at 366, 115 S.Ct. at 888.  A general appeal to a constitutional guarantee is

21   insufficient to present the "substance" of such a federal claim to a state court.  See Anderson v.

22   Harless, 459 U.S. 4, 7, 103 S.Ct. 276 (1982) (Exhaustion requirement not satisfied circumstance

23   that the "due process ramifications" of an argument might be "self-evident."); Gray v.

24   Netherland, 518 U.S. 152, 162-63, 116 S.Ct. 1074 (1996) ("a claim for relief in habeas corpus

25   must include reference to a specific federal constitutional guarantee, as well as a statement of the

26   facts which entitle the petitioner to relief.").

27         Petitioner did not raise this claim to the California Supreme Court for review. (See

28   Lodged Doc. No. 5.)  Nor does it appear that Petitioner raised the claim by way of motion

1  pursuant to section 1237.1, to the trial court, as advised by the Court of Appeal.  Consequently,

2  the instant claim must be dismissed, without prejudice, for failure to exhaust the state court

3  remedies.

4                                          ORDER

5        Based on the foregoing, it is HEREBY ORDERED that:

6    1.    The claims discussed in sections C through E of the instant order are DENIED,

7          with prejudice;

8    2.    The claim discussed in section F of the instant order is DISMISSED, without

9          prejudice;

10   3.    The Clerk of Court is directed to enter judgment; and,

11   4.    The court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c);

12         Slack v. McDaniel, 529 U.S. 473, 484 (2000) (a COA should be granted where

13         the applicant has made "a substantial showing of the denial of a constitutional

14         right," i.e., when "reasonable jurists would find the district court's assessment of

15         the constitutional claims debatable or wrong"; Hoffman v. Arave, 455 F.3d 926,

16         943 (9th Cir. 2006) (same).  In the present case, the Court finds that reasonable

17         jurists would not find it debatable that the state courts' decision denying

18         Petitioner's petition for writ of habeas corpus were not "objectively

19         unreasonable."

20

21   IT IS SO ORDERED.

22   **Dated:   June 11, 2008**              **/s/ Dennis L. Beck**
                                           UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28